**ELLIS FIRST NATIONAL BANK OF BRADENTON, as Executor, Estate of John A. Kerr, Deceased**

v.

**The UNITED STATES.**

No. 348–75.

United States Court of Claims.

Feb. 23, 1977.

**10**

Frank P. Riggs, Sun City Center, Fla., attorney of record for plaintiff.

Evelyn Leopold, with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant. Theodore D. Peyser, Donald H. Olson and Rose Anne Featherston, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS and KASHIWA, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

Plaintiff, the executor and trustee under the will of John A. Kerr, seeks to recover the sum of $37,917.79 plus interest; this amount represents the additional tax resulting from the disallowance of a deduction of $152,279.36 claimed in an estate tax return for certain charitable remainder interests created in the will of John A. Kerr. The Internal Revenue Service determined that the claimed deduction did not meet the requirements of section 2055(e) of the Internal Revenue Code of 1954, as amended by the Tax Reform Act of 1969 (Act), Pub.L. 91–172, 83 Stat. 487. Although plaintiff has advanced appealing equitable arguments for recovery, we hold that the disallowance by the Internal Revenue Service was correct and dismiss plaintiff's petition.

I.

John A. Kerr died testate on March 11, 1971. His last will and testament, dated December 3, 1970, was admitted to probate in the state of Florida, the domicile of the decedent, and administration of the estate proceeded in accordance with the terms of that will. The 1970 will repeated many of the terms of an earlier will executed on June 6, 1969. However, the 1970 will contained the customary clause "revoking all Wills and testamentary papers at any time heretofore made by me" and was the only will admitted to probate. The 1970 will was written and executed under emergency circumstances, a fact which is indicated in its inartful drafting.

By the terms of the 1970 will, a trust was established which left a life income interest in various properties, including life estates in two residences, to the decedent's sister, Hazel C. Kerr. Upon the death of the sister, the trust provided for a number of specific legacies, with the distribution of the residuary estate to certain designated religious and charitable organizations. The estate tax return was filed December 15, 1971, and as previously stated, a deduction was claimed for the value of the bequests of the remainder interests to charities; of the $152,279.36 deduction claimed, $42,740 was attributed to the value of the remainder interests in the residences.

Recognizing the possible invalidity of the deduction in the light of the Act, plaintiff, as executor of the estate, attempted to preempt any controversy and conserve the deduction by judicial reformation of the trust. However, the income beneficiary, then in her late 70's, would not agree, and the executor abandoned the reformation suit as futile.

Plaintiff contends that the changes wrought by the Act are not applicable to this estate. If the Act does apply, plaintiff concedes the nondeductibility of all remainder interests passed under the trust, except the remainder interests in the residences, with respect to which plaintiff argues that the Act creates an exception. We will first

consider the applicability of the Act to this estate and thereafter plaintiff's interpretation of its provisions with regard to the residences.

## II.

Among the many reforms provided, section 201(d)(1) of the Act, codified as section 2055(e) of the Internal Revenue Code of 1954 (26 U.S.C.), sought to rectify some of the abuses inherent in the then availability of estate tax deductions for charitable interest remainders. This objective is clearly set forth in H.Rep. No. 91–413 (Part 1), 91st Cong. 1st Sess., U.S.Code Cong. & Admin. News 1969, pp. 1645, 1663; 1969–3 C.B. 200, 237:

*General reasons for change.*—The rules of present law for determining the amount of a charitable contribution deduction in the case of gifts of remainder interests in trust do not necessarily have any relation to the value of the benefit which the charity receives. This is because the trust assets may be invested in a manner so as to maximize the income interest with the result that there is little relation between the interest assumptions used in calculating present values and the amount received by the charity. For example, the trust corpus can be invested in high-income, high-risk assets. This enhances the value of the income interest but decreases the value of the charity's remainder interest.

The Act altered section 2055(e) to allow deductions only for those charitable remainders left in a manner which would provide adequate assurance that the remainder interest would be realized by the charity. It provided:

§ 2055. Transfers for public, charitable, and religious uses

    \*    \*    \*    \*    \*    \*

(e) Disallowance of deductions in certain cases.—

(1) No deduction shall be allowed under this section for a transfer to or for the use of an organization or trust described in section 508(d) or 4948(c)(4) sub-

ject to the conditions specified in such sections.

(2) Where an interest in property (other than a remainder interest in a personal residence or farm or an undivided portion of the decedent's entire interest in property) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless—

A. in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), \* \* \*.

It is uncontested that the trust created in John A. Kerr's will is not one of the Act's approved devices, *i. e.*, a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund. Rather, the will sets up a traditional trust whereby the life beneficiary receives the net income from the investment of the corpus made in the discretion of the trustee.

Plaintiff's sole argument to refute the applicability of the Act is that the will of John A. Kerr falls within the purview of the exceptions afforded by section 201(g)(4)(B)(i) which provides:

(g) Effective Dates.—

(1)(A) Except as provided in subparagraphs (B) and (C), the amendments made by subsection (a) shall apply to taxable years beginning after December 31, 1969.

    \*    \*    \*    \*    \*    \*

(B) Such amendments shall not apply in the case of property passing under the terms of a will executed on or before October 9, 1969—

(i) if the decedent dies before October 9, 1972, without having republished the will after October 9, 1969, by codicil or otherwise, * * *.

Since plaintiff's estate tax return was filed in 1971, the estate is within the coverage of the Act unless: (1) the decedent died prior to October 9, 1972, which is the case here; (2) the property passed under the terms of a will executed on or before October 9, 1969, and (3) such will was not republished after October 9, 1969.

Plaintiff asserts that the effective dispositive instrument was the 1969 will, even though it was never admitted to probate; this is allegedly so since the 1970 will merely repeated the trust terms and consequent charitable remainder interests provided in the 1969 will. Despite the fact that the 1970 will expressly revoked all previous wills, plaintiff argues that the 1969 provisions relating to the charitable remainder interests remained intact and hence were not factually revoked in any way. In support of this proposition, plaintiff has contorted the doctrine of dependent relative revocation [1] to breathe vitality into the 1969 will and accord it a significance which it did not have under Florida law in the distribution of this estate.

■ Briefly stated, this doctrine provides that the destruction, cancellation, or revocation of an earlier will is conditioned, according to a judicially assumed intention of the testator, on the "validity" of the later will. If the later will fails for any reason, the court presumes that the testator would not have revoked the earlier will given this eventuality. Thus, the earlier will is "admitted to probate" as the effective dispositive instrument. Cf. *In Re Kaufman's Estate,* 25 Cal.2d 854, 155 P.2d 831 (1945) and *Linkins v. Protestant Episcopal Cathedral Found.,* 87 U.S.App.D.C. 351, 187 F.2d 357 (1950) on which plaintiff relies.

■ The doctrine is totally irrelevant to this case. Here, the second will—the 1970 will—was *valid*; therefore, to the extent

that its revocation of the 1969 will was conditional, that condition was met. We are aware of no authority which has broadened this doctrine to encompass not only the condition of the later will's validity, but also to condition the revocation on a showing that the later will is entitled to a more beneficial tax treatment. Moreover, the purpose of the doctrine is to admit the first conditionally revoked will to probate. Here, only the 1970 will was admitted to probate. The 1969 will had no effect on this estate.

Plaintiff has advanced other diffuse attacks on the statutory scheme, labeling it as arbitrary and hastily conceived; we do not find it so. Congress recognized that there had been abuses in deductions taken for charitable remainder interests and rectified the situation by narrowing the kind of trust devices which would give rise to the deductions. While none of the abuses which the Act aimed to eliminate may have been factually present in this particular estate, the restriction created was reasonably designed to forestall potential abuses. It is unfortunate for plaintiff's position that decedent's will was not redrawn in 1970 in accordance with the law then in effect, but the failure to change the will is not susceptible to remedy by judicial decision which would ignore the Act's plain meaning.

■ The 1970 will absolutely revoked the 1969 will. Assuming, for argument's sake, however, that plaintiff's strenuous arguments as to the legal identity between the 1969 and 1970 wills are valid, it is clear the plaintiff has failed to meet the third requirement of the section 201(g)(4)(B)(i) exception, *i.e.,* by proving that decedent died without having republished the will after October 9, 1969. To the extent the 1970 will parroted the provisions of the 1969 will, it republished them after the statutory date. The concept of "republication" arises in many areas of the law of wills:

* * * Republication has been used to include the following: (1) The validation of a prior invalid will; (2) the revival of

1. For an excellent discussion of the doctrine, see T. Atkinson, Handbook of the Law of Wills (2d ed. 1953), pp. 452–63 [hereinafter cited as Atkinson].

an instrument which has somehow lost its validity; (3) *the reaffirmance or bringing down to date of a will by codicil or later will;* (4) the restoration of a first will by the revocation of a second which had revoked the first. * * * (Atkinson, *supra,* p. 464, emphasis added.)

It is the third category which is pertinent, namely, that the 1970 will brought down to date and reaffirmed the 1969 will. The section 201(g)(4)(B)(i) exception was added to grant relief in instances where testators died shortly after the statute's enactment without executing a new will or who were deprived of an opportunity to change an old will to conform to the changes in the tax laws. Congress considered that it would be unfair to apply the Act's new provisions to these testators.[2] However, it is clear that Congress did not intend to give such relief in the case of a will which was republished after October 9, 1969, because the decedent in that situation had an opportunity to become aware of the statutory changes and to change his will accordingly. When John A. Kerr executed a new will in 1970, republishing the terms of the 1969 will, there was an opportunity to redraft the will with due regard to the changes resulting from the Act. As is manifest, this opportunity was not taken, and since it was not, we see no way in which plaintiff can avoid the effect of the Act or curtail its applicability to this estate. Plaintiff has directed our attention to two cases which we suppose are cited to show

that a court will not find a republication of a will when to do so would defeat the intention of the testator. Since John A. Kerr intended that there would be a deduction for the charitable interest remainders created by the trust, plaintiff asserts that a finding by this court of a republication would frustrate his intent. The 1970 will does not permit the desired deduction.

This is largely a rehash of plaintiff's misplaced arguments based on the doctrine of dependent relative revocation. Additionally, the two cases cited by plaintiff stand only for the proposition that later codicils to a will will not be held to overturn a will's provision when the codicil and will can be read together harmoniously.

In *Massachusetts Audubon Soc. v. Ormand Vill. Imp. Assn.,* 152 Fla. 1, 10 So.2d 494 (1942), the will devised certain real estate described as "Coacoochee Cottage." After the will was executed, another cottage was constructed on the lot and there was a later codicil which had the effect of republishing the will. The codicil did not modify that part of the will covering the bequest of the cottage. The court held that there was no conflict between the codicil and the will and that the latter properly passed the new structure and the lot on which it was located to the named devisee.

In *Waterbury v. Munn,* 159 Fla. 754, 32 So.2d 603 (1947) the will in issue established a valid spendthrift trust. A later codicil allowed the trustees (also the beneficiaries) to liquidate the trust property in their dis-

---

**2.** The initial House version of the Act did not provide for so liberal a transition period before the Act was applicable to all estates. This was altered in the Senate version:

"The committee also believes that it is appropriate to allow a reasonable period of time for existing wills and existing trusts to be modified to take the new rules into account. Accordingly, it is provided that the new rules are not to apply to property passing under a will in existence on October 9, 1969, or to property transferred in trust on or before October 9, 1969, if the individual dies within three years (i.e., before October 9, 1972) without having modified the will or the trust." S.Rep. No. 91–552, 91st Cong., 1st Sess., U.S.Code Cong. & Admin.News 1969 pp. 2027, 2121,; 1969–3 C.B. 423, 482.

The Senate version was accepted in the final bill, cf. Conf.Rep. 91–782, 91st Cong., 1st Sess.; 1969–3 C.B. 644, 655. Plaintiff argues that the Senate report used the word "modify" rather than the word "republish" which appears in the Act and this change is significant. In the first place, we must use the word which the Act expresses. Even if we look to the word "modify" in the Senate report, plaintiff's contention that the 1969 will is not modified by the 1970 will is untenable; plaintiff offers no reason to read the word so restrictively, and its interpretation is not consistent with the purpose of the transition periods provided by the Act.

cretion. The court held that the codicil did not destroy the spendthrift trust provided for in the will and that the trust was not incompatible with the changes made by the codicil in enlarging the interests of the beneficiaries. The decision rests on the principle that a will and a codicil must be construed together and if the codicil can be given an operative effect consistent with the conditions of the will, the prohibitions of the will will be deemed to be unaffected by the codicil.

For the reasons stated above, we conclude that this estate is covered by section 2055(e) as amended by the Act, and that the deductions for the charitable interest, remainders, other than the residences, were properly disallowed.

### III.

A far more difficult question is raised by plaintiff's contention that section 2055(e) permits a deduction for the charitable remainder interests in the residences even though these interests were not left in one of the prescribed trusts.

The determination of the Internal Revenue Service that plaintiff was not entitled to a deduction for the charitable remainder interest in the residences was based upon the following Treasury Regulation on Estate Tax (1954 Code) (26 C.F.R.):

§ 20.2055–2. *Transfers not exclusively for charitable purposes.*

\* \* \* \* \* \*

(e) *Limitation applicable to decedents dying after December 31, 1969—* \* \*

(2) *Deductible interests.* A deductible interest for purposes of subparagraph (1) of this paragraph is a charitable interest in property where—

\* \* \* \* \* \*

(ii) *Remainder interest in personal residence.* The charitable interest is a remainder interest, *not in trust*, in a personal residence. Thus, for example, if the decedent devises to charity a remainder interest in a personal residence and bequeaths to his surviving spouse a life estate in such property, the value of the remainder interest is deductible under section 2055. For purposes of this subdivision, the term "personal residence" means any property which was used by the decedent as his personal residence even though it was not used as his principal residence. For example, a decedent's vacation home may be a personal residence for purposes of this subdivision. The term "personal residence" also includes stock owned by the decedent as a tenant-stockholder in a cooperative housing corporation (as those terms are defined in section 216(b)(1) and (2)) if the dwelling which the decedent was entitled to occupy as such stockholder was used by him as his personal residence.

(iii) *Remainder interest in a farm.* The charitable interest is a remainder interest, not in trust, in a farm. \* \* \* [Emphasis supplied.]

Plaintiff relies primarily on the opening clause in the first sentence of section 2055(e)(2) which is set out in full *supra:*

(2) Where an interest in property (other than a remainder interest in a personal residence or farm or an undivided portion of the decedent's entire interest in property) passes or has passed from the decedent to a person, or for a use, described in subsection (a), \* \* \*.

In contrasting this language with the language of the regulation, plaintiff argues that the addition of the words "not in trust" in the regulation is an invalid attempt by the Internal Revenue Service to exercise its authority to promulgate interpretive regulations.

Plaintiff also argues that the Act permits a deduction for a charitable remainder interest in a personal residence passing through an unapproved trust, because section 2055(e)(1) and (2) make reference to transfers to or "for a use." Assuming that Congress intended the word "use" as a term of art, plaintiff says that since the modern trust device evolved from the common law system of uses, the Act allows a deduction for remainder interests in personal residences in trust, and consequently, the Trea-

sury Regulation is invalid because it excludes them. While this is an ingenious historical argument, there is nothing in the statute or its legislative history to confirm such an interpretation.

In urging that the regulation should be upheld, defendant maintains that it is not in conflict with the statute and that it reflects the intent of Congress that those remainder interests in a personal residence or farm, which pass free of trust, will qualify for the deduction. However, where such interests pass through a trust, it is the Government's position that the trust must conform to the requirements of section 2055(e) of the Internal Revenue Code of 1954 as amended by the Tax Reform Act of 1969.

Thus, the crux of the dispute between the parties is whether section 2055(e) allows a deduction only for an outright gift of a remainder interest in a residence or farm, *i.e.,* one not in trust, or permits, as well, a deduction for a remainder interest in a residence or farm that is in a trust but not in one of the trusts specifically sanctioned by the Act.

■ In order to resolve the issue, we begin with the well established principle that:

* * * Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. [*Commissioner v. South Texas Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).]

*See also, Weyerhaeuser Co. v. United States*, 395 F.2d 1005, 1008, 184 Ct.Cl. 492, 497 (1968) and *W & W Fertilizer Corp. v. United States*, 527 F.2d 621, 628, 208 Ct.Cl. 443, 457 (1975), *cert. denied* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). Since the statutory language leaves a doubt with respect to the application of the exception provided for a personal residence or a farm, an examination of the legislative history, for whatever illumination it may shed, is necessary.

■ The House version of the Act did not contain any exception for personal residences or farms; this proviso was added by the Senate, for reasons clearly expressed in its report, S.Rep. No. 91–552, 91st Cong., 1st Sess., U.S.Code Cong. & Admin.News 1969, p. 2116; 1969–3 C.B. 423, 479–80:

The committee agrees with the House that a taxpayer should not be allowed to obtain a charitable contribution deduction for a gift of a remainder interest in trust to a charity which is substantially in excess of the amount the charity may ultimately receive. * * * Another provision of the [House] bill * * * denied a deduction for an outright gift of a remainder interest to charity except to the extent a deduction would have been allowed if the gift had been in trust. This had the effect of denying a charitable contributions deduction in the case of a *nontrust* gift of a remainder interest to charity.

Although, as indicated above, the committee is in general agreement with the House regarding the need for a closer correlation between the charitable contributions deduction allowed for a gift of a remainder interest to charity and the benefit ultimately received by the charity, the committee believes that the House provision is unduly restrictive. The requirement that a deduction is to be allowed only if the remainder interest given to charity is in the form of an annuity trust or unitrust could have a significant adverse effect on established forms of charitable giving, such as pooled income fund arrangements, and *outright gifts or real property, such as a residence, where the donor reserves a life estate in the property.* Since these types of charitable giving cannot be framed in the form of an annuity trust or unitrust, the House provision would deny a deduction for the charitable gift. The committee believes that it is possible to continue to allow a charitable deduction in these types of cases with appropriate limitations, however, to prevent the overstating of the charitable contribution deduction. [Emphasis added.]

The final version of the Act adopted the Senate's suggestion regarding pooled income fund arrangements and gifts of real property, but the Conference Report[3] is unclear whether the amendment to the Act covered both charitable remainder interests in personal residences left in trust and as outright gifts.

Although there is nothing in the statute which expressly supports the rule announced in the regulation, we conclude that since the Senate version was adopted, the Senate Report provides the best available guide of the intent of Congress, and that the regulation is in accord with that intent. Under somewhat similar circumstances, we upheld a Treasury regulation in *Frank E. Mott v. United States*, 462 F.2d 512, 517, 199 Ct.Cl. 127, 137 (1972), *cert. denied* 409 U.S. 1108, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973). As shown above, the Senate Report spoke only of pooled income arrangements, which is one of the trusts approved in the Act, and outright gifts of real property, such as a residence. No reference was made to a deduction for a remainder interest in a residence left in an unapproved trust. Therefore, we think that the regulation is valid and that a holding to the contrary would be an unreasonable interpretation of the statute, and contrary to the will of Congress.

As we have said, section 2055(e) was amended to eliminate possible abuses in the administration of trusts which might operate to deprive the charity of the future remainder interest for which the estate has been credited with a deduction. This concern is no less present with respect to personal residences which pass first through a trust not approved by the Act. Unlike an outright gift of a remainder interest in a residence where the charity is guaranteed the eventual deed upon the termination of the life estate, a remainder interest which passes through a trust and is subject to the

trustee's exercise of discretionary powers, is not certain to be realized by the charity. The potential for abuse is dramatically evident in the trust established by the will of John A. Kerr:

\* \* \* \* \* \*

1. I direct that my Trustee shall provide to my sister, Hazel C. Kerr, the use of my real estate in Sun City Center, Florida, and New Richmond, Quebec, Canada, during her lifetime without charges of any nature and all expenses of maintaining said property shall be paid out of the net income of this Trust. *Either or both of said properties may be sold during my sister's lifetime only upon receipt of the written consent thereto of my said sister or her legal guardian.* [Emphasis added.]

\* \* \* \* \* \*

It is clear that the above-quoted language authorizes the trustee, upon the application or with the consent of the life beneficiary, to liquidate the two residences without the consent of any of the charities entitled to the remainder interest. Such action, if taken by the trustees, would deprive the charities of the certainty of receiving deeds to the properties; the proceeds from the sale could be mingled with the other trust assets and such assets could be administered in a manner which would deplete the value of the interests of the charities. The fact that none of these things was done in this case does not affect the result we have reached. It is the possibility for abuse which the Act sought to remove by limiting the kinds of trusts in which deductions may be taken for remainder interests bequeathed to charities.

## CONCLUSION

For the reasons stated above, we hold that plaintiff is not entitled to the deductions claimed for the value of charitable remainder interests created in the will in

---

**3.** In discussing acceptance of the Senate suggestion regarding a deduction for remainder interests, the Conference Report made only the following reference: "(2) In the case of a gift of a remainder interest in real property to charity it is provided that in determining the value of

the gift straight line depreciation or cost depletion is to be taken into account." Conf.Rep. No. 91–782, 91st Cong., 1st Sess., U.S.Code Cong. & Admin.News 1969, pp. 2392, 2410 1969–3 C.B. 644, 655.

suit and consequently, that plaintiff is not entitled to a refund of the taxes paid as a result of the disallowance of the deductions.

IT IS THEREFORE ORDERED, that the defendant's motion for summary judgment is granted as to all issues in suit, except that plaintiff is entitled, as defendant concedes, to an additional tax deduction for the costs incurred in this action, including reasonable attorney's fees. With that exception, plaintiff's motion for summary judgment is denied. Accordingly, the case is remanded to the trial division for a determination of such additional deductions and the amount of the tax refund to which plaintiff is entitled on account thereof.