ESTATE OF GRAFTON G. BURGESS, DECEASED, KENNETH D. THOMAS, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
Estate of Burgess v. Commissioner
Docket No. 8118-76.
United States Tax Court
T.C. Memo 1979-80; 1979 Tax Ct. Memo LEXIS 445; 38 T.C.M. (CCH) 335; T.C.M. (RIA) 79080; March 12, 1979, Filed *445 Decedent's will provided certain charities with transfers which did not qualify for charitable deduction treatment, since they were "split gifts" under section 2055(e)(2), I.R.C. 1954. After decedent's death, a dispute arose over property ownership involving, among others, the estate and the charities. A settlement agreement was reached under which the charities became owners in fee simple of decedent's residuary estate. Held, the settlement of a deed contest is not analogous to one of a will contest or similar claim and does not qualify the estate for a charitable deduction which did not exist otherwise. Heldfurther, the regulations under section 2055(e)(2) are valid and prevent the estate from claiming a charitable deduction under one of the exceptions to the "split gift" prohibition. Sections 20.2055-2(e)(2)(i)-(iii), Estate Tax Regs. Kenneth D. Thomas, for the petitioner. Eric B. Jorgensen, for the respondent. BRUCE MEMORANDUM OPINION BRUCE: Judge: Respondent determined a deficiency of $43,775.85 in the Federal estate tax of the Estate of Grafton G. Burgess. The entire deficiency results from respondent's disallowance of a charitable deduction claimed by petitioner *446 in the amount of $158,237.15. This case was submitted [1] on a full stipulation of facts with exhibits attached, and they are incorporated herein by this reference. The pertinent facts are set forth below. Grafton G. Burgess died on June 23, 1973, a legal resident of Alexander County, North Carolina. The executor of his estate is an individual whose legal residence was in Hickory, North Carolina at the time the petition was filed herein. The last will and testament of Grafton G. Burgess (hereinafter referred to as the decedent), dated January 3, 1973, and a first codicil to said will, dated June 6, 1973 (hereinafter referred to jointly as decedent's will), were admitted to probate by the Clerk of the Superior Court of Alexander County, North Carolina. After a number of specific bequests and devises, including a life estate in two small parcels of real estate to decedent's brother, Ralph Burgess *447 (hereinafter Ralph), decedent's will provided for the establishment of a residuary trust with decedent's mother, Mrs. Clara Burgess (hereinafter mother), as the life beneficiary. The trustees of this residuary trust were given broad discretion to pay or apply net income of the trust and, if income was insufficient, the corpus of the trust, to or for the benefit of the mother. They were directed to be extremely generous in providing for her support. The trust was to terminate upon the death of the mother and upon payment of all of her debts and expenses, including burial expenses. The will further provided for five specific bequests to be made upon the termination of the residuary trust. The remainder was then to be divided equally between St. John's Lutheran Church (Alexander County, North Carolina) and St. Paul's Lutheran Church (Taylorsville, North Carolina), the property to be received by them absolutely and in fee simple. The bulk of decedent's residuary estate as listed consisted of decedent's interest in eleven tracts of real estate conveyed to him as a gift by his mother in 1967. Eight of these tracts had been conveyed to decedent outright in one deed, but the mother had *448 reserved a life estate in three tracts which were conveyed in a second deed. The real property conveyed subject to the life estate included 18 acres on which the mother's and decedent's personal residence was located and certain business property located in Taylorsville, North Carolina. Shortly before decedent's death, at the instigation of decedent's brother Ralph, a guardian ad litem was appointed for the mother. The guardian ad litem immediately made preparation to institute an action against decedent on behalf of the mother, seeking to have the aforementioned conveyances set aside, the deeds declared null and void and the mother declared the owner of the lands in fee simple. On June 12, 1973, a petition was filed alleging that decedent's life expectancy was short and seeking an order to perpetuate decedent's testimony by deposition. An order directing decedent to appear and show cause, if he had any, why his deposition relative to the aforementioned conveyances should not be taken was entered immediately. Response was made for decedent by his attorney, now executor herein, who sought the appointment of a guardian ad litem for decedent. The application of June 14, 1973 was based *449 on decedent's alleged inability to defend himself because of resultant physical infirmities of cancer and its medical treatment. All such preparations ceased before action was instituted against decedent, due to his death on June 23, 1973. Approximately one month later, July 25, 1973, a complaint was filed by the mother's guardian against decedent's estate, the executor and the beneficiaries of the estate (except, of course, the mother). In support of the prayer to have the deeds declared null and void, it was alleged in the complaint that (1) the mother was unable to understand the nature of her act when making the contested deeds; (2) the decedent lived with the mother and was aware of her mental condition; (3) the decedent employed counsel to prepare the contested deeds; and (4) the decedent unduly influenced the mother to sign the contested deeds. An answer was timely filed on behalf of the estate by the executor, denying all of the above allegations, but admitting that decedent had been a member of the mother's household. Prior to trial of the case a settlement agreement was reached, and on July 31, 1974, judgment was entered in accordance with that agreement. As a finding *450 of fact, the judgment recites that only the residuary beneficiaries of decedent's will were directly involved in the litigation. However, the judgment was signed as "consented to" by the guardian ad litem for the mother and by her attorneys; by Ralph; by the executor and attorney for the estate; and by the attorney for the trustees of both churches, who was also attorney for one of the residual trustees under the will. Pursuant to the consent judgment, Ralph was conveyed approximately 42.5 acres of land, and he undertook to support the mother in the same manner as the residuary trustees were directed in decedent's will. All of the rights of the mother in the residuary trust provided for in decedent's will were extinguished. In addition, the life estate reserved by the mother in the tract of land on which her personal residence was located was reduced from 18 acres to approximately 2 acres surrounding the homeplace. Decedent's estate retained liability on a note in the amount of $30,000 which was secured by a deed of trust on the real estate involved in the litigation. Finally, decedent's estate was released and discharged from any and all rights, claims, or demands that the mother *451 and Ralph had or might have against it. [2] *452 All of the aforementioned court proceedings were conducted in the Superior Court of Alexander County. The Clerk of the Superior Court of Alexander County is the clerk in charge of the District and Superior Courts of Alexander County. There is no separate probate court. All estates and matters of probate are filed in the Superior Court. Judges of the Superior Court have jurisdiction of all probate matters supplementary to the jurisdiction of the Clerk of the Superior Court. On decedent's estate tax return, petitioner claimed a deduction in the amount of $158,237.15 for "Charitable, Public, and Similar Gifts and Bequests" relating to the property received by St. John's and St. Paul's Lutheran Churches. [3] *453 Respondent determined that no such deduction was allowable under section 2055[4] and, accordingly, disallowed the deduction. At the time of the decedent's death, pertinent parts of section 2055 provided as follows: SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES. (a) In General.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)-- * * *
(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, no substantial part of the activities *454 of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office; * * *
For purposes of this subsection, the complete termination before the date prescribed for the filing of the estate tax return of a power to consume, invade, or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be an irrevocable disclaimer with the same full force and effect as though he had filed such irrevocable disclaimer. * * *
(e) Disallowance of Deductions in Certain Cases.-- * * *
(2) Where an interest in property (other than a remainder interest in a personal residence or farm or an undivided portion of the decedent's entire interest in property) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less *455 than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless-- (A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), or (B) in the case of any other interest, such interest is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value of the property (to be determined yearly). Restated generally, as pertinent here, section 2055(a) authorizes a deduction from the value of the gross estate for the amount of any bequest [5] to a charitable organization. Where an interest in property passes from the decedent to a qualified organization, and an interest in the same property passes from the decedent to a person not described in subsection (a), subsection (e)(2) disallows the otherwise allowable deduction unless the interest passing *456 to the charitable organization is one of certain types specified in subsection (e)(2). The parties are in at least tacit agreement that deductions for decedent's bequests to St. John's and St. Paul's Lutheran Churches, under his will as drafted, would be disallowed under subsection (e)(2) as the type of "split interests" described in that subsection and not specifically excepted from those disallowance provisions. The parties are in express agreement, however, that pursuant to the consent judgment entered in the deed contest suit on July 31, 1974, the mother's life interest in the residuary trust to be established under the terms of decedent's will was extinguished, and the two churches thus acquired fee simple interests in the residuary of decedent's estate (subject only to five specific bequests and certain expenses to be paid from the residuary estate). Furthermore, respondent agrees that if the fee simple interests received by the churches passed to them by the terms of decedent's will, then petitioner would be entitled to the deduction *457 claimed. The dispute between the parties is over the effect that the consent judgment has upon the allowability of the deduction under section 2055. Petitioner's principal argument is based upon a line of cases stemming from the Supreme Court's decision in Lyeth v. Hoey,305 U.S. 188 (1938), those cases holding generally that when an interest in property passes pursuant to a will contest compromise agreement and the status of the recipient of the interest as heir or beneficiary is what enabled him to command the compromise, the interest received passed by inheritance or bequest within the meaning of Federal revenue statutes. In re Sage's Estate,122 F. 2d 480 (3d Cir., 1941), affirming 42 B.T.A. 1304 (1940); certiorari denied 314 U.S. 699 (1942); Thompson's Estate v. Commissioner,123 F. 2d 816 (2nd Cir., 1941). [6] Petitioner submits that settlement of the deed contest suit is analogous to settlement of a will contest, and because decedent's bequest to the churches was valid, the fee simple interests that they received came to them by bequest within the meaning of section 2055. In the alternative, petitioner argues for a charitable deduction of the transfer as made under decedent's *458 will to the churches by application of certain exceptions in section 2055(e)(2). Respondent's position is that the churches acquired the life interest of the mother in the residuary trust to be established under the terms of decedent's will by "purchase" rather than bequest, and consequently no deduction is allowable under section 2055. Respondent views the compromise settlement as a contractual agreement among the parties to the deed contest suit, the influence of each being reflected in the judgment. He submits that the parties have, in essence, rewritten decedent's will in an attempt to achieve a tax savings through a charitable deduction, which, as illustrated in Robbins v. Commissioner,111 F. 2d 828 (1st Cir., 1940), Underwood v. United States,407 F. 2d 608 (6th Cir., 1969), and Paris v. United States,381 F. Supp 597 (N.D. Ohio, 1974), is not permissible. Respondent further submits that the cases relied upon by petitioner do not support petitioner's position because a successful defense in the deed contest suit would have realized for the churches only the remainder *459 interests in the residuary trust that they were entitled to under the terms of decedent's will, interests not deductible under section 2055. Consequently, he contends, application of the legal principles established in the cases cited by petitioner actually support respondent's determination that the churches acquired their fee simple interests by purchase. The question to be decided is whether the fee simple interests ultimately received by the churches passed under decedent's will or whether they were first received by the mother and then transferred to the churches. A charitable deduction would be allowable in the first instance, but not in the second. It has been established, as petitioner claims, that settlement of a will contest or claim against an estate by an heir or legatee may be determinative of what has passed to whom under a will for estate tax purposes. See, Lyeth v. Hoey,supra. However, it is unnecessary here to discuss the effect of the settlement agreement in this case on the devolution of property under decedent's will. Here, unlike Lyeth, the dispute which resulted in a settlement centered on decedent's ownership of certain property listed in his estate. [7] *460 The complaint of the mother's guardian ad litem did not question the distribution of the estate, either by contesting the will or by asserting a claim against the estate. Instead, after decedent's death, a deed contest was instituted, [8] which, if successful, would have only indirectly affected the distribution of the estate. [9]
This *461 contest, and the compromise which followed, were not based upon the donative intent of the decedent as expressed in his will. Rather than adjusting the distribution of the estate within the expressed intentions of the decedent, giving to this settlement the effect sought by petitioners would be re-writing decedent's will. This would defeat the purpose of section 2055. Y.M.C.A. v. Davis,264 U.S. 47 (1924); Underwood v. United States,supra;Paris v. United States,supra. This we will not do. Having thus evolved from a distinguishable source, the distribution of decedent's estate under this settlement agreement is not to be given the effect prescribed by the principles of Lyeth. The principle of Lyeth that is applicable here is that whether the interest passed to the mother is a Federal question. That the mother, or someone on her behalf, was willing to exchange that interest so that Ralph might receive 42.5 acres of real property in fee simple rather than a life interest in 7.5 acres and so that the lawsuit might be settled did not prevent the interest from initially passing to her. Further, that the churches may have become residuary beneficiaries in fee simple under local *462 law after the settlement is not controlling. See Bath v. United States,480 F. 2d 289 at 292 (5th Cir., 1973); Cf. Jewett v. Commissioner,70 T.C. 430 (1978). We conclude that "split interests" passed on the date of decedent's death and, therefore, the churches did not receive their fee simple interests by bequest from decedent. [10]
In some instances, certain "split interests" are deductible as charitable transfers under section 2055(e)(2). Therefore, we will consider briefly *463 petitioner's two main alternative arguments concerning certain specific property interests and certain exceptions under section 2055(e)(2). Petitioner contends that decedent transferred his entire interest in certain properties when he left his remainder interest in those properties in the residuary trust. Decedent then, according to petitioner, properly transferred an "undivided portion of decedent's entire interest in property" within an exception to section 2055(e)(2). However, the question of transfer is not only what interest decedent surrendered, but also what interest the churches received.Although the remainder was decedent's entire interest, it became just another asset of the residuary trust, subject to the same contingencies as the other assets in that trust. Thus, the churches received the same non-qualifying "split interest" in those properties as in the other assets. See section 20.2055-2(e)(2)(i), Estate Tax Regs. Petitioner also contends that decedent transferred interests in personal residence and farm property which should qualify for deduction under specific exceptions to section 2055(e)(2). In this argument, petitioner directly opposes respondent's regulations *464 (Sec. 20.2055-2(e)(2)(ii) and (iii), Estate Tax Regs.) as eliminating those statutory exceptions. Rather than eliminate those exceptions for all situations, these regulations merely deny the use of those exceptions by taxpayers in a situation similar to that of petitioner. By requiring such transfers to be either outright or in a trust which would satisfy another subsection of the statute, the regulations clarify an otherwise ambiguous statute. While they may conflict with petitioner's interpretation of the statute, the regulations are clearly supported by legislative history and will be viewed here as expressing the interpretation intended by Congress. S. Rept. No. 91-552, 91st Cong., 1st Sess. (1969), 1969-3 C.B. 423; Ellis First National Bank of Bradenton v. United States,550 F. 2d 9 (Ct. Cl., 1977). Therefore, the personal residence and "farm" [11] *465 property transferred into the residuary trust does not qualify the estate for a charitable deduction, either. Decision will be entered for the respondent. Footnotes
1. By an Order dated April 4, 1978, the Chief Judge reassigned this case from Judge Charles R. Simpson to Judge Herbert L. Chabot for disposition. A subsequent Order of the Chief Judge, dated April 17, 1978, again reassigned this case, from Judge Chabot to Judge J. Gregory Bruce↩, for decision.
2. To present a complete picture of the instant situation, certain other facts are noted here which may not be obvious from the findings. Ralph, who instigated the appointment of the guardian ad litem for the mother so that the contested deeds could be challenged, was one of the defendants of the deed contest. Under decedent's will, Ralph received only a life interest in approximately 7.5 acres of land. As a result of the deed contest settlement, Ralph's interests increased from those of a holder of 7.5 acres for life to those of an owner of 42.5 acres in fee simple. Further, the interests of the churches increased from those of holders of contingent remainders in the residual trust of decedent's estate to those of fee simple owners of the residuary of decedent's estate. By comparison, the mother, on whose behalf the deed contest had been instituted, held less property after the settlement than she had taken by decedent's will before the deed contest was begun. In conflict with this is the fact that decedent executed the last codicil to his will less than three weeks prior to his death but made no change in the provisions of his will relative to Ralph, the churches or the mother.
3. On the return admitted into evidence, the amount shown claimed as a "charitable" deduction is $158,474.33. However, both parties argue this case based on the figure shown above and we assume, in the absence of evidence to the contrary, that the value of the property actually available to be received by the churches is not in dispute. 4. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect at the time of decedent's death, unless otherwise noted.↩
5. For convenience we shall hereinafter use the terms bequest or inheritance in lieu of the statutory term "bequests, legacies, devises, or transfers."↩
6. See also Estate of Morris v. Commissioner,T.C. Memo 1966-191, 25 T.C.M. 974↩, 35 P-H Memo T.C. par. 66,191.
7. While Lyeth v. Hoey has been applied in various contexts, including charitable deductions, that application has been of limited effect. A will contest settlement may be referred to in determining tax treatment of certain estate distributions. However, any amount received in settlement of a will contest is to be given the same estate tax treatment applicable to the amount which would have been received had the will contestant/recipient prevailed in the related litigation. Lyeth v. Hoey,supra, at 197; Elrick v. Commissioner,485 F. 2d 1049, 1054 (D.C. Cir., 1973). See also, Estate of Morris v. Commissioner,T.C. Memo 1966-191, 25 TCM 974↩, 35 P-H Memo T.C. par. 66,191. 8. Cf. Webb v. Eggleston,228 N.C. 574, 46 S.E. 2d 700↩ (1948). 9. Indeed, no renunciation of the will by any heir was ever↩ filed with the Superior Court of Alexander County, North Carolina.
10. Because of the settlement, whether the mother was incompetent in 1967 and consequentially whether decedent had good title in the property in question remains undecided. Nevertheless, absent proof or applicable state decision to the contrary, Commissioner v. Estate of Bosch,387 U.S. 456 (1967); Estate of Sullivan v. Commissioner,T.C. Memo 1974-38, 33 T.C.M. 183, 187, 1974 P-H T.C. Memo P74,038, page 74-175↩, we have approached this case with the view that decedent had good title at his death. Note that if we view decedent to have been without good title, our decision that the churches received their fee simple interests from the mother, and not under decedent's will, is much more obvious, but remains the same.
11. Although both parties seek a determination of whether certain property is farm property or not, such a finding is unnecessary here. In light of the validity of the regulations, no charitable deduction will be allowed in either situation, since the property, regardless of its use, was transferred through a non-qualifying trust.