**WEYERHAEUSER COMPANY, Transferee of Hamilton Paper Company**

v.

**The UNITED STATES.**

**No. 254–67.**

United States Court of Claims.

June 14, 1968.

John T. Piper, Washington, D. C., attorney of record, for plaintiff.

W. Stephen McConnell, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

Plaintiff Weyerhaeuser Company, a corporation of the State of Washington, sues to recover $13,991 in documentary stamp taxes which it alleges were erroneously and illegally assessed against it by defendant. The taxes were assessed under Section 4301 of the Internal Revenue Code of 1954, 26 U.S.C. § 4301 (1958), since repealed (Pub.L. 89–44, Title IV, § 401, 79 Stat. 148 (1965)). Plaintiff paid the assessment, filed a timely claim for refund which was disallowed by defendant, and now sues for refund. The facts are not in dispute and the issue is before us on cross-motions for summary judgment.

I

Plaintiff, a Washington corporation, wished to acquire the assets of Hamilton

Paper Company, a Pennsylvania corporation. Plaintiff also desired to have these assets transferred to a wholly-owned subsidiary corporation chartered in the State of Washington, and for that purpose plaintiff decided to incorporate a Hamilton Paper Company in Washington to be ready to receive the assets if the acquistion took place. (For convenience, the Hamilton Paper Company of Pennsylvania will be referred to as "Old Hamilton," and the Washington corporation will be referred to as "New Hamilton.") The purposes to be accomplished were to afford Weyerhaeuser an entry into the paper industry and to assure Hamilton Paper Company of a supply of pulp. Another primary objective of both plaintiff and Old Hamilton was to consummate a transaction that would be free of Federal income taxes. To effectuate these various aims, a memorandum of understanding was entered into on January 18, 1961, between plaintiff and Old Hamilton, under the terms of which it was agreed that plaintiff would acquire all the assets of Old Hamilton, worth about 14 million dollars, in exchange for a block of plaintiff's stock and the assumption by plaintiff of Old Hamilton's liabilities, after which Old Hamilton would be liquidated and its block of plaintiff's stock distributed to the Old Hamilton shareholders. The memorandum of understanding also provided that the transaction could not be consummated until the plan of reorganization was approved by the shareholders of Old Hamilton and a ruling was obtained from the Internal Revenue Service that the transaction would be free of income taxes.

On April 11, 1961, plaintiff had New Hamilton chartered as a Washington corporation. On April 13, 1961, plaintiff subscribed to five thousand shares of the stock of New Hamilton, having a par value of $10 per share. The subscription was accepted by New Hamilton on the same day and 100 shares of stock were issued to plaintiff in exchange for $1,000. On the same date, plaintiff and Old Hamilton submitted to

the Internal Revenue Service a detailed plan of reorganization in support of their previously filed request for a ruling that the transaction was free from income tax. On April 20, 1961, the shareholders of Old Hamilton approved the plan of reorganization, and on May 1, 1961, the Internal Revenue Service issued a letter ruling that the transaction would be free from income tax because it constituted a reorganization within the meaning of § 368 (a) (1) (C) and (2) (C) of the Internal Revenue Code of 1954, a so-called "C" reorganization. All the contingencies in the memorandum of understanding had been fulfilled, and it was time to complete the transaction.

■ Accordingly, on May 1, 1961, plaintiff exchanged 347,063 shares of its common stock for the assets of Old Hamilton; then Old Hamilton distributed to its shareholders the shares of plaintiff thus acquired. On both of these actions, the applicable documentary stamp taxes were paid and are not at issue in this case. Also, on May 1, plaintiff paid for the other 4,900 shares of New Hamilton stock to which it had subscribed, and New Hamilton issued the shares to plaintiff. Further, on May 1, 1961, plaintiff contributed the newly acquired Old Hamilton assets to New Hamilton. A capital contribution to a corporation is a non-taxable event, so no income tax was imposed on this step of the deal. The transaction had then completed and the parties had achieved their goals under the memorandum of understanding. The issue to be decided is the amount of the documentary stamp tax which is to be imposed on the issuance of the stock of New Hamilton under the provisions of Section 4301 of the Internal Revenue Code of 1954.

The rate of tax imposed by Section 4301 is one-tenth of one percent of "the actual value of the certificates." Plaintiff contends that applicable Treasury Regulations require that the certificates be valued as of the date when the subscription was accepted by the issuing corporation, New Hamilton, and that on the pertinent date, New Hamilton was

worth only the $50,000 which plaintiff had agreed to pay it in exchange for all of its stock. Defendant replies that the value of the stock must include the worth of the assets purchased by plaintiff from Old Hamilton and contributed to the capital of New Hamilton, regardless of the date chosen for the valuation. The theories advanced by defendant in support of its contention are rejected for the reasons hereinafter stated. We agree with plaintiff that the value of the stock on the date of acceptance of the subscription is the value on which the tax is imposed and also that on that date the value was $50,000.

## II

■ The date on which the stock is to be valued can be determined by applying the regulations promulgated by defendant:

> (a) Scope of tax—(1) In general. Section 4301 imposes a tax on each original issue of shares or certificates of stock issued by a domestic corporation. * * * In the case of subscriptions, stock is deemed to be issued when the subscription is accepted. [Treas. Regs. § 47.4301-1 (1962)[1]]

There seems no doubt that under the clear language of this regulation, the "date of issue" of the stock of New Hamilton subscribed to by plaintiff was April 13, 1961. It is undisputed that this was the date on which plaintiff subscribed to the stock and New Hamilton accepted the subscription. It may appear artificial to place the "issue" at a date somewhat removed from the date on which the issuing corporation actually takes the formal step of issuing all the shares or certificates. In fact, however, any other rule would make for easy manipulation of taxes by the simple device of changing the date of actual issue, whereas fixing the date of issue—and with it the date of valuation—at the date of subscription, values the stock at the

price the purchaser indicates he is willing to pay for it.

■■ In arguing that the stock was issued on May 1, 1961, defendant maintains that despite the broad wording of the regulation, it was intended to apply only to certain kinds of transactions that are designed to avoid the imposition of one or more stamp taxes on the issuance or transfer of stock, rather than to the ordinary situation where issuance of the stock to the subscriber follows in the normal course of events soon after acceptance of the subscription. This contention fails because it collides with the plain language of the regulation, which contains no limitation or restriction on the general rule it states. In arguing for a "date of issue" different from the date the subscription was accepted, defendant is challenging its own regulation. However, "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes", Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948), and "Treasury Regulations under the Internal Revenue Act are as binding on the Government as they are on the taxpayer." McCord v. Granger, 201 F.2d 103, 106 (3rd Cir. 1952). Since defendant has shown no inconsistency between the regulation and the statute, the regulation is as binding on the Government as it is upon the taxpayer.

## III

The problem of valuation is again solved by reference to the applicable regulations:

> (2) Computation of tax—(i) In general. A single computation of tax must be made with respect to the certificates (and shares which are not represented by certificates) issued by a corporation on each day. The amount of tax imposed under section 4301 in respect of shares or certifi-

---

1. Though promulgated in 1962, these regulations were made applicable to all transactions occurring after January 1, 1959, 27 Fed.Reg. 1088 (1962).

cates issued by a corporation on a particular day is computed by ascertaining the actual value of all certificates (and shares which are not represented by certificates) issued on such day and applying to such actual value the applicable rate of tax.

(ii) Actual value. (a) In general, the actual value of stock is the fair market value of the stock. Fair market value of stock is considered to be the price agreed upon by the parties to the issuance to be paid for the stock unless the price includes property or services or the issuance transaction is not an arm's length transaction or is subject to special conditions which result in a price not reflecting the value of the stock as such value would be determined by reference to the mean selling price of the stock on the open market or to all the facts and circumstances of the case. [Treas.Regs. § 47.4301–1(b) (2) (1962)]

Since we have already held that the date of issue for all 5,000 shares of stock was April 13, 1961, it follows that a single computation of value must be made.

Both parties rely upon the above-quoted regulation and agree that the stock issuance was not an arm's length transaction because it was between a parent corporation and a wholly-owned subsidiary. They also agree that in the absence of a market for the stock, the actual value must be determined from all the facts and circumstances. However, in their application of these agreements to the facts, the parties differ materially in their views of "actual value."

█ Since the stock represented 100 percent ownership of New Hamilton, the value of such stock was the value of New Hamilton on April 13, 1961, the date of issue. Faced with the serious obstacle presented by its own regulations, defendant presents a "substance over form" argument. It says that there is no showing that plaintiff had any need or purpose for New Hamilton with an actual value of only $50,000, or that New

Hamilton had any purpose for obtaining $50,000 separate and apart from the assets of Old Hamilton. Thus, it argues that all three steps in the transaction were a part of a single plan, plaintiff's capital contribution to New Hamilton on May 1, 1961, must be taken into account when New Hamilton is valued, even if the value is fixed as of April 13, 1961. The weakness in defendant's argument is that it is dispelled, almost completely, by the undisputed facts. Although there is no doubt that plaintiff intended to contribute the assets of Old Hamilton to New Hamilton, plaintiff's intention to make that contribution was subject to three contingencies on April 13, 1961:

(1) Plaintiff could not acquire the assets of Old Hamilton nor contribute them to New Hamilton unless and until the shareholders of Old Hamilton approved the plan of reorganization; that did not occur until April 20, 1961;

(2) the consummation of the plan was expressly subject to a ruling by the Internal Revenue Service that the reorganization was tax free, and the ruling was not issued until May 1, 1961;

(3) plaintiff was under no contractual obligation to anyone to contribute the assets of Old Hamilton to New Hamilton and might have changed its mind at any time before the contribution was made on May 1, 1961.

█ The first two of these contingencies were completely beyond plaintiff's control. Plaintiff had no power over the more than 1,000 Old Hamilton shareholders who might have preferred to continue the enterprise in its existing form. Obviously, plaintiff had no control over the Internal Revenue Service with respect to the ruling which was sought. In the light of these uncertainties, it is doubtful that a willing purchaser would have paid more than $50,000 for the stock of New Hamilton on April 13, 1961. However, we need not speculate about the value of the stock of New Hamilton on the date of the issuance, because the uncontroverted affidavit accompanying plaintiff's motion shows that

"at the close of the day of April 13, 1961, the fair market value of all of the stock of New Hamilton did not exceed $50,000." Consequently, we adopt this statement as a finding of fact. Royal Indem. Co. v. United States, 371 F.2d 462, 178 Ct.Cl. 46 (1967), cert. denied, 389 U.S. 833, 88 S.Ct. 33, 19 L.Ed.2d 93.[2]

■ In asserting that plaintiff's subscription contract obligation to New Hamilton was an obligation to no one but itself, the Government is apparently asking us to determine that the existence of New Hamilton as a separate corporate entity should be disregarded. The record is clear that new Hamilton was incorporated for a legitimate business purpose. Defendant has not established that New Hamilton was a mere sham, nor persuaded us that other grounds exist for ignoring its status as a separate legal entity. National Carbide Corp. v. Commissioner of Internal Revenue, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949); Paymer v. Commissioner of Internal Revenue, 150 F.2d 334 (2d Cir. 1945).

When plaintiff exchanged 347,063 shares of its common stock for the assets of Old Hamilton, it paid a documentary stamp tax on the exchange in the amount of $4,997.72. Again, when plaintiff's shares of stock were distributed to the Old Hamilton shareholders upon its liquidation, effective May 5, 1961, a further documentary stamp tax of $5,396.60 was paid. A third and final stamp tax of $50 was paid when plaintiff made final payment of the subscription price of the New Hamilton stock. As a result of the three payments, the Government received all of the stamp taxes to which it was entitled under the applicable statute and regulations.

Accordingly, plaintiff's motion for summary judgment is granted, defendant's motion for summary judgment denied, and judgment is hereby entered for plaintiff in the amount of thirteen thousand, nine hundred ninety-one dollars ($13,991), plus interest thereon as provided by law.

---

2. As a result of this finding, we need not consider plaintiff's alternative ground for recovery.