**WORLD AIRWAYS, INC., and World Air Center, Inc., Petitioner-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 75–2176.

United States Court of Appeals, Ninth Circuit.

Nov. 15, 1977.

---

La Verne L. Dotson (argued) of Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiffs-appellants.

William A. Whitledge, Atty. (argued) of Dept. of Justice, Washington, D. C., for respondent-appellee.

Petition to Review a Decision of the Tax Court of the United States.

Before LUMBARD,* WRIGHT and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

This is an appeal from a decision of the Tax Court, reported at 62 T.C. 786 (September 18, 1974), and involves two issues.

The first issue involves the question of when World Airways can deduct certain engine and airframe overhaul expenses. The Tax Court held that the only proper year to deduct these expenses was in the same year the overhaul and consequent expenses were actually incurred. *See* 62 T.C. 789–805.

The second issue is whether or not World Airways is entitled to a 7% investment credit for the purchase of an Aero Commander Jet Aircraft which it leased to the government (the FAA). The Tax Court held that World Airways was not entitled to the 7% credit. *See* 62 T.C. 805–813.

For the reasons stated by the Tax Court in its exhaustive and well-reasoned opinion,

---

* The Honorable J. Edward Lumbard, Senior United States Circuit Judge, Second Circuit, sitting by designation.

we affirm. On the overhaul expense issue, we all agree and no further comment is necessary. On the investment credit issue, however, Judge Lumbard would reverse and he dissents from our affirmance, *infra.* On this issue we add a few very brief comments. The dissent adequately sets forth the essential facts.

■ The real problem with this issue is that nowhere in the case law or applicable regulations is there a definition of the terms "casual or short term" as those terms are used in Treas. Reg. § 1.48–1(k). The dissent suggests that the lease of the aircraft in this case fits within the overall policy of the investment credit provisions as established by Congress and therefore the lease should be defined as a "casual or short term" lease. We cannot agree.

■ The purpose of the investment credit is to modernize and expand the nation's productive capabilities and increase employment.[1] The dissent urges that this particular lease fits the purpose and policy of the investment credit provisions because the lease between the FAA and World Airways "contemplates use of the airplane remaining with the taxpayer for the greater part of the airplane's twelve-year life," and (in note 4) that " . . . the intent of petitioner was compounded of both a desire to lease the plane to the government part time, *and* a desire to enjoy the benefits of using the plane in its own business the rest of the time."

The dissent apparently feels that if World Airways uses the aircraft for its own use during the times the government is not putting the aircraft to use, then this use expands its production and employment and entitles World Airways to the investment credit.

We feel that if World Airways had in fact used the aircraft to expand its productive capabilities and increase its employment, then possibly we would be persuaded to join Judge Lumbard in defining the lease as "casual or short term" and to allow World Airways the investment credit.

Such is not the case, however, from our reading of the record, transcript and exhibits in this case.

First, Exhibit 9–E, a resolution of the Board of Directors of World Airways, suggests that the *only* reason for their purchasing of the aircraft in the first place was to fill the lease with the FAA. Secondly, testimony by a World Airways executive suggests that once the leases with the FAA were completed, World did not use the aircraft to increase its own production or employment, but instead tried to get rid of the aircraft by sale or long-term lease. (Vol. II of the record, pp. 82–83). And, finally, we can find no evidence in the record to show that World Airways ever did in fact put the aircraft to its own use during the times the aircraft was not being used by the government.

In short, it appears to us that World purchased the aircraft solely for lease to the government. When it could no longer be leased to the government, they had no further use for it. Surely, this did not increase World's production or employment and is not what Congress envisioned when it created the investment credit provisions of the Internal Revenue Code.

■ Section 1.48–1(k) of the Regulations recognizes that the government often has unforeseen or extraordinary needs which it satisfies by obtaining the use of property under "casual" or "short-term" leases from the private sector—that is, from taxpayers who are able to temporarily forego the use of their Section 38 [26 U.S.C. § 38] property for the convenience of the government. If such a lease to the government would cause the taxpayer to lose the credit, such property would not be available to the government on a lease basis, or would force the taxpayer to require a rental payment of an amount sufficient to compensate the taxpayer for the loss of the credit. It is, therefore, reasonable to allow, by regulation, a taxpayer to lease Section 38 property to the government for a short time without causing the taxpayer to lose the credit.

1. H.R.Rep. No. 1447, 87th Cong., 2d Sess. 8 (1962), *reprinted in* 1962–3 C.B. 405, 411–13.

Implicit in this regulatory exception is the requirement that the property be Section 38 property in the hands of the taxpayer—property which the taxpayer has acquired to improve his productivity. The regulation contemplates allowing otherwise qualifying property to continue to qualify even though it is used temporarily by the government, but it does not contemplate allowing property to qualify as Section 38 property when that property is purchased to lease to the government.

We cannot find that the lease in this case either falls within the purpose of the investment credit provisions, or is a "casual or short-term" lease. Therefore, the Tax Court properly denied the investment credit.

The standard of review has been variously expressed by this court in different contexts. In this case petitioners have failed to demonstrate on any issue raised, under any of these standards, that the Commissioner's method of determining their income tax deficiencies was either "unreasonable, arbitrary, or capricious," *Myron v. United States,* 550 F.2d 1145, 1146 (9th Cir. 1977), or that the Tax Court's decision was "clearly erroneous," *Collman v. C. I. R.,* 511 F.2d 1263, 1267 (9th Cir. 1975), *Photo-Sonics, Inc. v. C. I. R.,* 357 F.2d 656, 659 (9th Cir. 1966), *Penn v. C. I. R.,* 219 F.2d 18, 20 (9th Cir. 1955).

Affording the proper deference, as we must, the Tax Court is AFFIRMED.

LUMBARD, Circuit Judge (concurring in part and dissenting in part):

I concur in the affirmance of the Tax Court on the question of when overhaul expenses may be deducted, but I respectfully dissent with respect to the denial of the investment tax credit to petitioner.

Petitioner, a corporation authorized by the Civil Aeronautics Board to furnish charter air transport service to the United States government, submitted a sealed bid for the lease of an Aero Commander Jet Aircraft to the FAA on August 15, 1966. The invitation for bids, whose terms became those of the contract, provided for a term of one year "subject to availability of funds." On August 31, 1966, petitioner purchased the plane in question in order to fulfill its obligations under the FAA contract. The plane was delivered to the FAA on September 6, 1966, under a purchase order authorizing rental payments until December 31, 1966. On December 20, 1966, the FAA extended the period of authorized rental payments for three months, until March 31, 1967.

After competitive bidding each time, petitioner secured additional one-year government leases (always subject to availability of funds) in September of 1967, 1968 and 1970. Its bid in 1969, however, was unsuccessful, and the plane was apparently returned to petitioner. Thus, for a period of one year between government leases, the plane was at the disposal of the taxpayer.[1]

On its federal income tax return for 1966, petitioner sought to take advantage of the investment credit granted by I.R.C. § 38 with regard to its purchase of the plane. The Commissioner (respondent) determined, and the Tax Court ruled, that the plane did not qualify for the credit because it fell within the ban of I.R.C. § 48(a)(5), which renders "property used by the United States" ineligible for section 38 treatment. Since Treas. Reg. § 1.48–1(k) defines "property used by the United States" as including property leased to the government, except for "property leased on a casual or short-term basis," the issue here is whether the lease of the airplane to the FAA was a casual or short-term lease.

I agree with the petitioner that a "short-term lease" is a lease whose term is short in relation to the useful life of the leased property. The purpose of the investment

---

1. The record does not reveal what use, if any, was made of the plane by petitioner while the government was not using it during lease terms. It is also unclear what was actually done with the plane while it was in petitioner's possession from September, 1969 to September, 1970, but there is no doubt that neither petitioner nor the government was under any obligation to enter into any further leases.

credit is to encourage purchases that will modernize and expand productive capabilities. S.Rep. No. 1881, 87th Cong., 2d Sess., [1962] U.S.Code Cong. & Admin.News, p. 3314. The reason the credit is denied with respect to property leased to the government is that government demand for certain goods, such as data processing machines and typewriters,[2] is fairly inelastic. Thus, the lower rental that an investment credit would permit a lessor to charge would not encourage the leasing of more such equipment. *Id.* at 3319.

The expression "short-term" must therefore be taken to refer to leases of property to which the above reasoning does not apply. In the first place, I see no reason why the government's demand for chartered airplanes, unlike its demand for copiers, might not be responsive to changes in price. More important is the fact that a lease of the kind entered into by petitioner and the FAA contemplates use of the airplane remaining with the taxpayer for the greater part of the airplane's twelve-year life. When the government will be using property otherwise eligible for the investment credit for only a small part of the property's life, the property will be available to increase its owner's productivity for most of its life. Under these circumstances, allowance of the credit is appropriate in light of its purpose, and the lease should be considered a short-term lease.

The alternative interpretations of the word "short-term" proposed by respondent and by the Tax Court do not appear to me to serve as well the underlying rationale of the investment credit. To hold as does the Tax Court, 62 T.C. 786, 813, that once it is determined that property was "used by the United States," "it is clear that the 'short-term lease' provision in the regulations can-

not be applicable," is, I think, to render that provision totally nugatory.

Nor do I believe it to be particularly helpful to look to the standard for "predominant use" under I.R.C. § 48(a)(2)(4) in order to decide when property is used by the United States, as the Tax Court does. When "predominant use" is the criterion for establishing eligibility, then some rule of thumb must be created to permit a determination of whether a given piece of property will qualify, without the need to wait for at least half the property's lifetime.

In the case of the government-use exception, however, no such rule of thumb is needed. An analysis of the purposes of the credit and the exception leads to the conclusion that property qualifies for the credit unless the government's use of it is so nearly exclusive, and the government's demand for it so inelastic as to put it outside the normal operation of economic incentives. Therefore, I see no reason to extend the area subject to the anomalous consequences that can attend the "predominant use" test.[3]

Respondent would have us look to the purpose for which property was acquired in determining whether its lease to the government was "casual or short-term." Leaving aside the curious logic inherent in using taxpayer's motive as the criterion for adjudging a lease long- or short-term, I am persuaded that the entire thrust of the investment credit provisions of the Tax Code looks not to a taxpayer's plans, but to what actually takes place. Thus, it would little avail a taxpayer to claim that he had meant to use property in his business if, in fact, he had only used it personally. I do not believe that it is appropriate to speculate about motive in this case.[4]

2. That this is the kind of equipment whose lease to the government was contemplated by the Treasury is clear from the example used in Treas.Reg. § 1.48–1(k).

3. Thus, if an item is purchased ten days before the end of a fiscal year, and used outside of the country for the first six days of its life and within the country forever thereafter, the transaction falls afoul of the test developed under

I.R.C. § 48(a)(2). A similar outcome would follow under the Tax Court's test if the same property were leased to the government for the first six days of its life, but used in the lessor's business forever thereafter.

4. Moreover, respondent does not appear to consider the possibility—here, indeed, the virtual certainty—that the intent of petitioner was

**891**

Finally, it seems to me that petitioner here relied on its reasonable interpretation of Treas. Reg. § 1.48–1(k) in deciding to purchase the plane in question. This interpretation reveals that the kind of government lease with which the IRS was concerned was on the order of leases of typewriters or copiers, for the lifetime of that model. In attempting to ascertain whether the lease he contemplated would be considered casual or short-term, the taxpayer here could reasonably have concluded that the lease of the plane was different both in kind and degree from the lease of a Xerox machine for the duration of the useful life of that model copier. Under these circumstances, I think it appropriate to hold the Commissioner to this interpretation of the Tax Code. *Zuckman v. United States,* 524 F.2d 729, 739, 207 Ct.Cl. 712 (1975); *Weyerhaeuser Co. v. United States,* 395 F.2d 1005, 1008, 184 Ct.Cl. 492 (1968); *McCord v. Granger,* 201 F.2d 103, 106 (3d Cir. 1952).

For these reasons, I believe that the Tax Court's decision to deny the investment credit to petitioner should be reversed.