DIVERSIFIED AUTO SERVICES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Diversified Auto Services, Inc. v. Commissioner
Docket No. 3327-81.
United States Tax Court
T.C. Memo 1982-108; 1982 Tax Ct. Memo LEXIS 638; 43 T.C.M. (CCH) 701; T.C.M. (RIA) 82108; March 4, 1982. C. Thompson Wells, Jr., for the petitioner. William F. Hammack, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined deficiencies of $ 5,604 and $ 16,195 in petitioner's Federal income tax for its taxable years ending October 31, 1977, and October 31, 1978, respectively. The only issue is whether petitioner, an accrual basis taxpayer, is allowed a deduction for a reserve for estimated future liability under warranty contracts furnished to customers of its rustproofing business. All the facts have been stipulated and are found accordingly. Petitioner's principal place of business at the time of filing its petition was Howell, Mich. Petitioner computes its income under the *639 accrual method of accounting. Petitioner, a Michigan corporation, operated eight automobile rustproofing shops during the years in issue. Prior to petitioner's incorporation in 1974, the business was operated as a partnership. From 1972, when the partnership began operations, until November 1976, the business granted a limited warranty against rust to customers whose vehicles were rustproofed during that time. Liability was limited to the price the customer originally paid for the rustproofing. The warranty covered new vehicles for five years after the rustproofing treatment and used vehicles for two years after the treatment. [1] Liability existed only if a part of the vehicle rusted from the inside out. The warranty continued in effect only if the owner submitted the vehicle for inspection by petitioner within thirty days before the expiration of one year from the date of rustproofing a used vehicle or two years from the date of rustproofing a new vehicle. This interim inspection was required whether or not rust had appeared as of the date of the required inspection. Upon proof that the rust-proofing failed to protect the vehicle, petitioner, at its option could (1) refund *640 the original amount paid for the service or (2) apply that amount towards the cost of repairing the damaged area of the vehicle. In November 1976, petitioner initiated a new warranty policy as follows: (1) new, non-commercial vehicles - full cost of repair or replacement of the rusted part so long as the customer owned the vehicle, (2) new, commercial vehicles - amount paid by the customer for five years from the date of rustproofing, and, (3) used vehicles - amount paid by the customer for a period of three years from the date of rustproofing. In order to keep the new warranty in effect, the customer was required to return the vehicle to petitioner for inspection during a period prescribed by petitioner and every two years thereafter for so long as the customer owned the vehicle. Those interim inspections were required regardless of whether rust had appeared as of the date of inspection. Failure to return the vehicle for any required inspection voided the warranty. The warranty also became void if the vehicle was involved *641 in a collision or other occurrence involving damage to the rustproofing application unless, after inspection of the vehicle, petitioner chose to issue a new warranty for the vehicle. In the event a vehicle rusted from the inside out, the customer was required to return the vehicle along with the warranty document issued to him at the time of rustproofing. This procedure was required to be effected within 30 days of the first notice of rust by the customer and not later than the last day of the term of the warranty. The warranty extended only to a customer who owned the car as of the date of the rustproofing and did not extend to any subsequent owner of the vehicle. The annual sales and warranty claims made against petitioner and its predecessor partnership are set forth in the following table. Warranty claims are expressed as a percentage of annual sales. Year
Annual Sales
Warranty Claims
Percent [2]
1972
$ 36,617.00
$ 929.92
2.54
1973
80,793.00
2,966.58
3.67
1974
100,852.67
3,718.89
3.69
1975
273,024.83
4,911.47
1.80
1976
502,308.00
9,840.94
1.96
1977
973,239.00
14,243.36
1978
1,736,915.00
11,199.26
1979
1,677,565.18
5,667.22
1980
1,332,190.48
1,669.72
*642 For its fiscal year ending (FYE) in 1977 and its FYE in 1978, petitioner claimed, in addition to deductions for warranty expenses actually paid, deductions of $ 11,675 and $ 33,740, respectively, for a reserve set up for estimated future liability under the warranty contracts. In his notice of deficiency, respondent disallowed the deductions claimed for estimated future liability. The issue is whether petitioner, an accrual basis taxpayer, may deduct amounts set aside for estimated future liability under warranty contracts furnished to customers of its rustproofing business. Section 461(a) [3] states the general rule that a taxpayer is allowed a deduction in "the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." An accrual basis taxpayer, such as petitioner, may deduct an expense when (1) all events have occurred which determine the fact of liability and (2) the amount of the *643 liability can be determined with reasonable accuracy. Sec. 1.461-1(a)(2), Income Tax Regs. We are unable to find all events determining the fact of petitioner's liability occurred during the taxable years in issue. The purpose of the "all events" test is to protect against deductions for expenditures that might never occur. Thus, as a general rule, the existence of a contingency with respect to a liability prevents accrual for tax purposes. World Airways, Inc. v. Commissioner,62 T.C. 786, 802 (1974), affd. 564 F.2d 886 (9th Cir. 1977). Petitioner's obligations under the warranty contracts herein are subject to numerous contingencies. Liability accrued only in the event a part of the vehicle rusted within five years of the rustproofing service with respect to new commercial vehicles and within a shorter period with respect to used vehicles. In addition, failure by the customer to return the vehicle for certain interim inspections voided the warranty. No liability arose if the vehicle was involved in a collision or other occurrence involving *644 damage to the rustproofing application unless petitioner chose to issue a new warranty. Moreover, under the new policy, the warranty was in effect only so long as the customer owned the rustproofed vehicle; no warranty extended to subsequent owners. It is clear petitioner's liability with respect to the warranties was not fixed during the tax years in issue. Petitioner was under no obligation to make payment on a warranty until and unless the above conditions were met. Those conditions act to prevent a liability from ever coming into existence, thus, the "all events" test is not met. Contrary to petitioner's contentions, neither the mere existence of a contractual obligation nor the fact that petitioner's method of computing income is in accord with accepted accounting methods satisfies the "all events" test. World Airways, Inc. v. Commissioner,supra.[4]
Accordingly, Decision will be entered for respondent. *645 Footnotes
1. A warranty defines "new" vehicles as those vehicles less than three months old or driven less than 3,000 miles and all others as "used" vehicles.↩
2. Warranty claims for 1977 through 1980 include only those claims made as of April 1981. Since warranty claims were outstanding, percentages based on those claims would not accurately reflect total claims as a percentage of annual sales.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
4. Since petitioner has failed to meet the "all events" test, it is unnecessary to consider whether, at the end of each taxable year, petitioner was able to determine with reasonable accuracy the cost of the estimated future liability.↩