RAGNAR V. HOKANSON and MARILYN L. HOKANSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hokanson v. Commissioner
Docket No. 7549-81.
United States Tax Court
T.C. Memo 1982-414; 1982 Tax Ct. Memo LEXIS 324; 44 T.C.M. (CCH) 550; T.C.M. (RIA) 82414; July 26, 1982. Robert G. Burt and Jeffrey L. Dye, for the petitioners. Carmen J. Santamaria, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies of $56,953 and $48,969 in petitioners' Federal income tax for 1977 and 1978, respectively. After concessions, the sole issue is whether petitioners are entitled to an investment credit for certain new section 38 property. [1]
FINDINGS OF FACT Most of the facts are stipulated and are found accordingly. Petitioners, Ragnar V. Hokanson and Marilyn L. Hokanson, resided in Oregon City, Ore., when they filed their petition herein. Since 1941, Ragnar V. Hokanson (hereinafter petitioner) has been involved in the trucking business. In 1947, he started leasing trucks. The issue herein arises from a leasing transaction begun in 1971 with the North Pacific Canners and Packers, Inc., (hereinafter Nor-Pac). Nor-Pac is an Oregon corporation formed in the early 1930s by various food processing organizations which distributes *326 food in the Pacific Northwest for those organizations. The shareholders of Nor-Pac are the member food processing organizations; there are no individual shareholders. Consistent with the goal of marketing its cooperative members' products, Nor-Pac pursued the most efficient transportation services available at the lowest possible cost. Prior to its affiliation with petitioner, Nor-Pac looked to commercial organizations for its transportation needs. Due to unreliable service and high costs, these commercial arrangements proved unsatisfactory. Daniel Clausen (Clausen), general manager of Nor-Pac, proposed to the Board of Directors of Nor-Pac (hereafter the Board), that Nor-Pac establish its own transportation department. Due to a lack of capital, Nor-Pac decided against the purchase of equipment and, instead, opted for a leasing arrangement. Knowing of petitioner's good reputation in the leasing business, Clausen contacted petitioner who, at that time, was operating a transportation division in Texas. Their discussions culminated in a combination lease-employment arrangement, wherein, Nor-Pac hired petitioner as Transportation Director and also agreed to lease certain transportation *327 equipment from petitioner. Petitioner served as Transportation Director of Nor-Pac during the years 1970 through 1978. Petitioner also leased equipment to Nor-Pac from the beginning of 1971 through March 1980. All such equipment, including the equipment at issue herein, was subject to a "master" lease agreement which was signed on November 15, 1970, and became effective January 1, 1971. [2] Generally, Nor-Pac agreed to pay a fixed rate per mile (with a minimum mileage requirement per piece of equipment) while petitioner bore all risk of loss and was responsible for all maintenance and repairs of the equipment. That lease provided that both lessor and lessee had the power to terminate the lease at the expiration of one (1) year from the date of this agreement, or at the expiration of each successive period of one (1) year thereafter by giving the [other party] at least thirty (30) days written notice of the election so to do. Thus, while *328 both parties had a right to cancel the lease, neither had an option to renew the lease. All equipment leases between Nor-Pac and petitioner, including the leases herein, were examined and reviewed on an annual basis. Petitioner attended each annual meeting and presented both a written statement and an oral presentation to the Board providing a detailed analysis of that year's trucking operations. The Board then decided whether to continue and/or modify the leasing arrangement. The lease was periodically amended to incorporate higher lease rates. In 1977 and 1978, petitioners, then doing business as Hokanson Fleetways, [3] purchased and leased to Nor-Pac the following new section 38 property: *329 Date of Lease
Quantity
Description
Purchase Price
March 1, 1977
5
1977 Freightliner Truck Tractors
$42,000 each
March 1, 1977
5
1977 Timpte Semi-Trailers
$24,000 each
June 1, 1978
4
1978 Freightliner Truck Tractors
$45,600 each
June 1, 1978
4
1978 Timpte Semi-Trailers
$26,000 each
The parties have stipulated the useful life of each of the tractors and trailers listed above is eight years.
Petitioners arranged for and incurred sole liability for all financing of the equipment purchased herein. Nor-Pac did not guarantee any portion of petitioners' loans. Petitioners had no significant source of income outside their leasing and employment relationship with Nor-Pac. Due to petitioner Ragnar V. Hokanson's bad health, petitioners terminated the lease on March 31, 1980. In his notice of deficiency, respondent disallowed the investment credit claimed by petitioners in 1977 and 1978 with respect to petitioners' purchase and lease of the above-described tractors and trailers. OPINION At issue is whether petitioners are entitled to an investment credit with respect to certain new section 38 equipment. Section 38 allows a credit against *330 tax for investments in certain depreciable property. When a noncorporate taxpayer acquires and leases section 38 property, an investment credit is allowed only if one of two tests set forth in section 46(e)(3) is met. [4] Such a taxpayer must establish that (1) he manufactured or produced the leased property or (2) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the first 12 months after the property is transferred to the lessee the section 162 deductions (with certain exceptions) with respect to such property exceed 15 percent of the rental income produced by such property. Sec. 46(e)(3)(A) and (B). Petitioners did not manufacture or produce the equipment at issue herein. Thus, the first test of section 46(e)(3) cannot be met. With respect to the second test, the parties have stipulated that the section 162 deductions exceed 15 percent of the rental income produced by the property. Thus, the only issue is whether the *331 term of the lease is less than four years (50 percent of the stipulated eight year useful life of the leased property). There is no dispute over the legal rights and obligations arising out of the lease agreement. The parties recognize that both the lessor and lessee were bound by the lease for at least the first year and, thereafter, either party could terminate the lease at the expiration of any succeeding one-year lease term by giving the other party 30 days' written notice. Thus, the lease was an open-ended one which continued until either party affirmatively terminated it. The difficulty arises in the parties' attempt to ascertain the "term" of the lease for purposes of section 46(e)(3)(B). Understandably, the statute, which looks to the lease "term," does not easily lend itself to a clear application of an open-ended lease of this type. We recently considered the application of section 46(e)(3)(B) to a similar open-ended lease in Ridder v. Commissioner,76 T.C. 867 (1981). In that case, the taxpayer purchased a new tractor-truck and leased it to his employer for an indefinite lease term which either party could cancel upon 30 days' written notice. Presented *332 with little evidence other than the relevant lease provision, we denied the investment credit since the taxpayer failed to show the term of the lease was less than 50 percent of the useful life of the property. Petitioners contend that facts herein are distinguishable from the facts presented in Ridder. Petitioners point to the annual meetings wherein petitioner defended the merits of his trucking operation. Petitioners note the distinct possibility the lease might have been terminated had Nor-Pac determined its transportation needs would be served better by commerical firms. Petitioners emphasize that Nor-Pac, basically a conservative organization, was unwilling to commit itself beyond the initial year of the lease.Thus, petitioners argue this arrangement constituted a one-year lease for purposes of section 46(e)(3)(B). [5] Respondent, on the other hand, contends the lease cannot be viewed as a short-term lease because it was an open-ended agreement with no set termination date. For the following reasons, we find for respondent. *333 Section 46(e)(3)(B) requires a determination of the "term" of the lease. A taxpayer is not necessarily denied the investment credit simply because the lease is open-ended with no definite termination date. On the other hand, he is not assured of the credit merely because neither party was committed under the lease beyond 50 percent of the useful life of the leased property. See Ridder,supra.[6] Similarly, that the parties recognized a distinct "possibility" the lease might be terminated within that period is not determinative. Rather, a taxpayer must at least give some reason to indicate that termination of the lease was "realistically contemplated" by the parties within the statutorily specified period. Ridder,supra, at 875. The burden of proof is on petitioner. Ridder,supra;Rule 142(a), Tax Court Rules of Practice and Procedure. The evidence herein gives no indication the parties contemplated terminating the lease within the four-year period. *334 In fact, it appears more likely the parties intended this equipment to be leased for its entire useful life. [7] Petitioner leased equipment to Nor-Pac continuously from 1971 through 1980, and in no instance during that period does the record indicate the lease of any piece of equipment was terminated prior to half of that property's useful life. [8]
*335 Moreover, the circumstances indicate an undertaking of a long-term nature by both parties.Consummation of the leasing arrangement resulted in major overhauls of each party's method of conducting business. Where Nor-Pac originally depended exclusively on commercial firms to supply its transportation needs, it now looked almost exclusively to petitioner for those needs. Petitioner, likewise terminated a trucking business he operated in Texas in order to move to Oregon and take charge of Nor-Pac's transportation department. Nor only did petitioner lease a fleet of trucks to Nor-Pac, he also managed that trucking operation as an employee of Nor-Pac. It is apparent that significant moves were made by petitioner and Nor-Pac upon entering this leasing arrangement. Such an arrangement bespeaks substantial and long-term undertakings by each party. In addition, the loan officer of the bank that financed petitioner's purchases of the equipment testified that normally the bank does not extend a loan beyond that time a lease can be terminated since the bank's primary source of repayment is the lease income. Based on his understanding of the leasing arrangement, the loan officer concluded *336 this lease would continue even though it could be terminated. Thus, the loans were granted. The terms and maturity dates of those loans are not disclosed. Pointing to the annual reviews of the lease conducted by the parties, petitioners contend this arrangement constitutes a series of one-year leases that were "renegotiated" on an annual basis. We disagree. We are not faced with two or more successive short-term leases, each of which, standing alone, meets the 50 percent test of section 46(e)(3)(B). Rather, we view these annual reviews as periodic examinations of a continuing and indefinite lease. [9]
*337 In short, we find no meaningful distinction between the facts presented herein and the facts described in Ridder. Petitioners have failed to establish the "term" of the lease is less than 50 percent of the useful life of the leased property. [10]
Finally, petitioners argue they are not within the class of persons Congress meant to deny the investment credit by enacting section 46(e)(3). This section was enacted to limit the availability of the investment credit to those noncorporate lessors actually using the property in an active business and not to those leasing arrangements motivated largely by tax reasons. H. Rept. No. 92-533, *338 1972-1 C.B. 498, 513; S. Rept. No. 92-437, 1972-1 C.B. 559, 583. Congress determined that only lessors who manufactured or produced the property or short-term lessors should qualify for the credit. Thus, Congress enacted two hard-and-fast tests, neither of which petitioners meet. We realize petitioners may not be within the targeted class. However, as we noted in Ridder,supra, Congress chose an easily administered approach and sacrificed a degree of equity, and it is not for us to pass upon the wisdom of legislation.[11]
In summary, we find petitioners are not entitled to the investment credit with respect to the equipment at issue herein. [12]
To reflect concessions and the foregoing, Decision will *339 be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. The "master" lease served as the governing instrument for all equipment thereafter acquired and leased to Nor-Pac. Schedules describing equipment subject to the lease were periodically attached and incorporated into the agreement.↩
3. Until July 1, 1975, petitioner and his wife, petitioner Marilyn L. Hokanson, conducted the leasing operation as a proprietorship. On that date, petitioners formed Hokanson Fleetways, a general partnership from which the business was operated. At all relevant times, petitioners were the sole owners of the Hokanson Fleetways' partnership interests. For the sake of simplicity, we refer to petitioner, Ragnar V. Hokanson, or petitioners as the lessor(s) to all transactions even though the husband-wife partnership, Hokanson Fleetways, was the leasing entity during the years in issue.↩
4. Even though an individual lessor is denied the credit with respect to new sec. 38 property, generally he may still elect to pass it through to the lessee.See sec. 48(d).↩
5. Since the "master" lease was entered into on January 1, 1971, and sec. 46(e)(3)(B) applies only to leases entered into after September 22, 1971, Pub. L. 92-178, section 108(a), 85 Stat. 497, 508, petitioners argue the statute is not applicable herein. However, we find that, at the time each piece of equipment was placed in service, a separate lease of that particular piece of equipment arose which was merely subject to the terms of the "master" lease. Thus, when petitioners acquired and leased the equipment at issue herein, separate leases for that equipment were entered into in 1977 and 1978. Accordingly, sec. 46(e)(3)(B) applies to all leased property in question.↩
6. See also Xerox Corp. v. United States,656 F.2d 659 (Ct. Cl. 1981), wherein the taxpayer's contention that its customer's right to cancel the rental agreement of copying machines on 15 days' notice created a "short term" lease for purposes of sec. 1.48-1(k), Income Tax Regs., was rejected. That regulation excludes property leased on a casual or short-term basis from the application of sec. 48(a)(5) which precludes the investment credit for property used by governmental units. In accord is Stewart v. United States,40 AFTR 2d 77↩-5735, 77-2 USTC par. 9648 (D. Nebr. 1977), wherein it was held the minimum legally enforceable period of the lease did not control the question of whether the lease was short term for purposes of the same regulation.
7. Due to petitioner Ragnar V. Hokanson's bad health, petitioners gave written notice of their election to terminate the master lease on March 31, 1980. There is no basis for petitioners' contention, that termination of the lease in March 1980, (less than four years after the equipment herein was leased) entitles them to the investment credit. Allowance of an investment credit is based on facts and circumstances in existence in the year property is placed in service. Ridder v. Commissioner,76 T.C. 867 (1981); Bloomberg v. Commissioner,74 T.C. 1368 (1980); World Airways, Inc. v. Commissioner,62 T.C. 786 (1974), affd. 564 F.2d 886 (9th Cir. 1977). Unforeseeable subsequent events do not change the result. Ridder,supra.↩
8. While neither party placed significance on these facts, we think petitioners' history for holding this property, particularly for years before the subject equipment was leased, has a bearing on this issue.↩
9. To prevent an end-run around the statute, the regulations provide that when two or more successive leases are entered into with respect to the same property, the terms of such leases shall be aggregated for purposes of the 50 percent test of sec. 46(e)(3)(B). Sec. 1.46-4(d)(4), Income Tax Regs. See also Rev. Rul. 76-266, 1976-2 C.B. 10↩, wherein respondent would not require the terms of two leases on the same property to be aggregated where it is shown that the subsequent lease was entered into at the expiration of the first lease and the leases were not interrelated and were negotiated independently of each other.
10. See World Airways, Inc. v. Commissioner,564 F.2d 886 (9th Cir. 1977), affg. 62 T.C. 786 (1974) wherein the taxpayer-lessor, who was awarded three successive one-year leases of its aircraft from the Federal Aviation Administration, but was unsuccessful in its bid for an additional one-year lease, was denied the investment credit since the aircraft was "used by the United States," sec. 48(a)(5), and the lease did not constitute a "casual or short term" lease within the meaning of sec. 1.48-1(k), Income Tax Regs.↩
11. As the statute applies to noncorporate taxpayers only, we note that had petitioners incorporated their business, the credit would have been allowed.↩
12. Arguing respondent's position was not substantially justified, petitioners claim an award for attorney's fees pursuant to 28 U.S.C. section 2412(d). Petitioners, claim is rejected. McQuiston v. Commissioner,↩ 78 T.C.     (May 13, 1982).