DANA DISTRIBUTORS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dana Distributors, Inc. v. Commissioner
Docket No. 982-87
United States Tax Court
T.C. Memo 1988-514; 1988 Tax Ct. Memo LEXIS 537; 56 T.C.M. (CCH) 569; T.C.M. (RIA) 88514; October 31, 1988
John M. Clancy, for the petitioner. Kevin M. Flynn, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioner's 1983 Federal income tax in the amount of $ 94,702. The issues this Court must decide are (1) whether petitioner must include in income in the year of receipt deposits and handling charges received in accordance with state law on nonrefillable beverage containers; and, if so, (2) whether petitioner, an accrual method taxpayer, may deduct the deposits and handling charges in the year of collection. The facts of this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure, and are so found. Petitioner is a corporation engaged in the wholesale beverage distributing business. Its principal place of business at the time the petition *539 was filed was Middleton, New York. Petitioner maintained its books and filed its Federal income tax return on an accrual method of accounting. Petitioner purchased beer, soft drinks, and other beverages in refillable and nonrefillable containers from the manufacturers of such beverages for sale and distribution to retail stores, bars and restaurants. The retail stores sold petitioner's beverages for off-premises consumption, and the bars and restaurants sold them for on-premises consumption. Petitioner's income and deductions in respect of refillable containers are not at issue in this case. The deficiency at issue results from petitioner's treatment of deposits and handling charges in respect of nonrefillable containers for Federal income tax purposes. In 1983, the New York State Legislature enacted the New York Returnable Container Act ("the Act"). N.Y. Envtl. Conserv. Law, sec. 27-1005 et seq. (Consol. 1983). Although the original Act was effective July 1, 1983, by an amendment the Act became effective September 13, 1983. The Commissioner of the New York State Department of Environmental Conservation issued regulations effective July 1, 1983, for the purpose of implementing *540 the Act.
The Act required, inter alia, that every beverage container sold or offered for sale in New York have a refund value of not less than five cents. N.Y. Envtl. Conserv. Law, sec. 27-1005. The Act also required petitioner, as a distributor, (1) to accept from a dealer or operator of a redemption center any empty beverage containers of the design, shape, size, color, composition, and brand sold by petitioner, and (2) to pay the dealer or operator of the redemption center the refund value of such beverage container. N.Y. Envtl. Conserv. Law, sec. 27-1007. The Act provides that, in addition to the refund value of a beverage container as established by N.Y. Envtl. Conserv. Law, sec. 27-1005, a distributor as part of its agreement with any dealer or operator of a redemption center, had to reimburse the dealer of operator 1.5 cents for each beverage container accepted by the distributor from the dealer or operator. See N.Y. Envtl. Conserv. Law, sec. 27-1007.3. Beginning on September 13, 1983, petitioner initiated and collected a deposit and handling charge on all beverages that it *541 sold to retail stores, bars, and restaurants in nonrefillable containers in accordance with the provisions of the Act. Also commencing September 13, 1983, petitioner established reserve accounts on its books for recording beverage container deposits and handling fees. The account for the beverage container deposits was designated "Beer Deposits -- Wholesaler." The account for handling fees was designated "Handling Fees Payable." Petitioner did not pay a deposit to manufacturers for beverages purchased in nonrefillable containers. Petitioner separately stated the amount of the container deposits on its invoices to retail stores, bars, and restaurants. The handling fees were not separately stated on the invoice but were added to the purchase price. Petitioner delivered filled containers to its customers and picked up empty containers at the time of its scheduled deliveries. The frequency of deliveries and pick ups varied from customer to customer. Petitioner's invoices to retail stores, bars and restaurants had no title retention clause for the containers. No legend concerning titled appeared on the beverage containers. Petitioner's name also was not on the beverage containers.
*542 In reporting its gross receipts from the sale of beverages in nonrefillable containers during 1983, petitioner included in income the amount received from the sale of beverages in nonrefillable containers exclusive of the container deposits and the handling fees. The container deposits and handling fees received by petitioner from the sale of beverages were deposited into the general bank account of the business, together with ordinary sales receipts. On its books petitioner increased its reserve accounts by the amount of the container deposits and handling fees received from the sale of beverages in nonrefillable containers. Upon receipt of empty containers, petitioner refunded container deposits and handling fees to retailers or operators of redemption centers, and petitioner decreased the "Beer Deposits -- Wholesaler" and "Handling Fees Payable" accounts by the amount of such refunds. Between September 13, 1983 and December 31, 1983, the total amount credited to the "Beer Deposits -- Wholesaler" and "Handling Fees Payable" accounts was $ 441,948. The total debited to the container deposits and handling fees accounts during the period at issue was $ 236,074. The total balance *543 in the reserve accounts as of December 31, 1983, was $ 205,874, i.e., the difference between $ 441,948 (the amount credited to the accounts) and $ 236,074 (the amount refunded by petitioner for container deposits and handling fees). The total balance in the accounts as of December 31, 1983, in the amount of $ 205,874 consisted of $ 155,475 and $ 50,399 for container deposits and handling fees respectively. In his notice of deficiency dated October 16, 1986, respondent disallowed petitioner's "reserve method" of accounting for deposits on nonrefillable containers and increased petitioner's income by $ 205,874. The first issue we must decide is whether the deposits and handling charges are includable in petitioner's income upon receipt. Petitioner excluded from gross receipts the amounts collected on the sale of beverages attributable to potential refunds and handling charges that would be incurred on the return of the containers to petitioner. Petitioner argues that such amounts are deposits, and not income, or alternatively that petitioner is entitled to deduct an offsetting amount under the "all events test" of section 1.461-1(a)(2), Income Tax Regs. *544 Respondent challenges petitioner's "reserve method" of accounting and contends that the deposits and handling charges are income from the sale of beverages. Respondent argues that such income is includable in 1983 because the "all events" test for inclusion was satisfied. Further, respondent contends that petitioner may not deduct the deposits and handling charges until it actually refunds the amounts because the "all events" test for deduction is not met until that time. The law governing the taxability of amounts collected on the sale of items returnable to the seller is well-established. "Deposits" on containers are includable in income if the containers are sold along with their contents. Okonite Co. v. Commissioner,4 T.C. 618, 628 (1945), affd. 155 F.2d 248 (3d Cir. 1946), cert. denied 329 U.S. 764 (1946). The later return of the container for a "refund" of the "deposit" is considered a resale. On the other hand, amounts collected in respect of returnable containers are not includable in income if the seller retains title to the containers *545 and takes the deposits only to secure the return of the containers. Farmers Creamery Co. v. Commissioner,14 T.C. 879 (1950). In Okonite Co. v. Commissioner, supra, returnable reels used to ship wires and cables were sold, resulting in income to the seller. 4 T.C. 618, 628. In Okonite, the taxpayer charged its customers for the shipping reels at the time of the wire or cable sale. The taxpayer created a reserve account to record the deposited amounts and credited the account when a customer returned a reel. Three factors were relied on to determine whether the containers were sold: (1) whether the distributor/seller retained title to the containers; (2) whether purchasers were under an obligation to return the containers or were free to keep the containers, sell or otherwise dispose of them or return them to the seller; and (3) whether the seller had an enforceable right to the return of the containers. Applying these factors to this case, we conclude that petitioner sold the beverage containers along with their contents. First, the *546 sales invoices contained no title retention clause. Second, petitioner did not place its name on the containers or exhibit any other effort to control disposition of the containers. Third, petitioner had no enforceable right to compel the retail stores, bars, restaurants, or individual consumers to return the containers. While there is an economic incentive to return the containers, under New York law the buyers are free to keep the containers, dispose of them or return them to other distributors besides petitioner. The amounts received as deposits and handling charges, therefore, are includable in petitioner's income.
Income is included in gross income in the taxable year of receipt unless accounted for in a different period under the taxpayer's method of accounting. Sec. 451(a). [1] An accrual method taxpayer includes income in its gross income when "all events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Section 1.451-1(a), Income Tax Regs. The "all events" test for the accrual of *547 income is met where the taxpayer actually has received the income and the taxpayer's use of the funds is unrestricted. Brown v. Helvering,291 U.S. 192 (1934); Automobile Club of New York, Inc. v. Commissioner,32 T.C. 906, 913 (1959), affd. 304 F.2d 781 (2d Cir. 1962). Petitioner had unrestricted use of the deposits and handling charges when it received these funds on the sale of the beverages. Petitioner deposited the collected funds into its general business bank account. We hold, therefore, that the income from deposits and handling charges in includable in gross income when received. See Colonial Wholesale Beverage Corp. v. Commissioner,T.C. Memo. 1988-405. The second issue before the court is whether petitioner is entitled to deduct the deposits and handling charges in 1983 as accrued expenses. Section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred *548 during the taxable year in carrying on any trade or business." An accrual method taxpayer may deduct an expense in the year it is incurred regardless of when it is paid. Sec. 461(a). The "all events" test is the standard for determining the year in which an expense is incurred for Federal income tax purposes. United States v. Anderson,269 U.S. 422 (1926); sec. 1-146-1(a)(2) Income Tax Regs.
The "all events" test is a two-part test requiring that (1) all events have occurred which determine the fact of liability, and (2) the amount of the liability can be determined with reasonable accuracy. United States v. Hughes Properties, Inc.,476 U.S. 593 (1986). Failure to satisfy either requirement is fatal to petitioner's claim. Southern Pacific Transportation Co. v. Commissioner,75 T.C. 497, 634 (1980). The purpose of the first part of the test is to ensure that taxpayers will not deduct expenditures that may never occur. World Airways, Inc. v. Commissioner,62 T.C. 786 (1974), affd. 564 F.2d 886 (9th Cir. 1977); *549 see also Mooney Aircraft, Inc. v. United States,420 F.2d 400 (5th Cir. 1969). The first part of the "all events" test requires that an expense must be "firmly established." United States v. General Dynamics Corp., 481 U.S.   (1987). No deduction is permitted for a contingent liability. Brown v. Helvering,291 U.S. 193 (1934). If a liability is subject to a condition precedent, then not all events have occurred which establish the fact of liability. United States v. General Dynamics Corp., 481 U.S. at   note 5 (1987). A liability is not contingent if all conditions giving rise to the liability have been satisfied. Burnham Corp. v. Commissioner,90 T.C. 953, 955 (1988). In United States v. General Dynamics Corp., 481 U.S.   (1987), an accrual method taxpayer self-insured its liability for benefits to employees for medical care. The taxpayer established a reserve for its obligation at the end of the year to reimburse its employees for medical care already received but for which the employees had not yet filed claims. The taxpayer then deducted these amounts as accrued expenses. The Supreme Court *550 found that the last event necessary to fix liability was submission of the claim form and not receipt of medical care by covered individuals. The Court reasoned that some employees may not file claims for reimbursement, "through oversight, procrastination, confusion over the coverage provided, or fear of disclosure to the employer of the extent or nature of the services received." United States v. General Dynamics, supra. The Court determined that the taxpayer's claimed liability was estimated on events (the filing of claims) that had not occurred during the taxable year. In the present case, the last event necessary to fix petitioner's liability to refund deposits and handling charges is the return of the containers. Accord Fred Nesbit Distributing Co. v. United States,604 F. Supp. 552 (S.D. Iowa 1985). Petitioner argues that the fact of its liability to refund the deposits on returned containers is fixed as funds are received in accordance with state law at the time it sells and distributes the beverages. The New York law, However, does not require dealers and consumers to return the containers petitioner sells. It only requires that petitioner refund deposits *551 and handling charges on containers returned if they are presented for refund. The dealers and consumers are free to keep the bottles or dispose of them in any way. Petitioner is not required to refund deposits and handling charges on smashed bottles. N.Y. Comp. Code R. & Regs. tit. 10, sec. 367.7 (1983). Moreover, the Act requires a distributor to accept from dealers and refund containers of the design, shape, size, color, composition and brand sold by the distributor. N.Y. Envtl. Conserv. Law, sec. 27-1007.2. While the state law also requires that a distributor who initiates a deposit on the container reimburse any other distributor who redeems that container, sec. 27-1007.4, the facts in this case do not indicate how a distributor determines who initiated the deposit. Petitioner distinguishes its situation from similar cases involving deposits on beverage containers. See Fred Nesbit Distributing Co. v. United States,604 F. Supp. 552; Wilson v. Commissioner,T.C. Memo. 1986-140. Petitioner points to differences in New York law as compared with the state laws applicable in the cited cases. For instance, New York law obligates the distributor *552 to make refunds, whereas the state law in Wilson obligated only the retail sellers to refund deposits. In addition, under New York law, petitioner is obligated to refund containers returned by other distributors if petitioner originated the deposit on such containers. Finally, in Fred Nesbit, the distributor's obligation to make refunds ended if it stopped selling that container. Under New York law, a distributor is required to continue refunding containers for 60 days if it stops selling a particular container. These differences in state law are important, but they are not sufficient to fix petitioner's liability. The countervailing factor in this case is that the dealers, consumers or other redeeming distributors do not have any obligation to return the containers to petitioner. Their return is a condition precedent to petitioner's liability. Until the containers are presented to petitioner for refund, its liability under state law is not fixed. The General Dynamics taxpayer was not obligated to reimburse employee medical expenses until the employee filed a reimbursement claim; petitioner is not obligated to refund the container deposits and handling charges until *553 the dealers, consumers of other distributors return the containers. Based on General Dynamics, therefore, we hold that petitioner's liability to refund container deposits is not firmly established until the containers are returned to petitioner for refund. See also Colonial Wholesale Beverage Corp. v. Commissioner, supra.
Petitioner's reliance on United States v. Hughes Properties,476 U.S. 593 (1986), is misplaced. Petitioner suggests that Hughes Properties stands for the principle that an obligation imposed by state law fixes the fact of liability. In Hughes, a gambling casino created reserve accounts for the payoff amount on its progressive jackpots. A state regulation required that the payoff amount could not be reduced until the jackpot was actually paid to a winning player. The taxpayer deducted as an accrued liability the increase in the progressive jackpot for the year. The Court found that the effect of the state regulation was to fix liability because the taxpayer was obligated to pay the accrued jackpot amount despite that the future winner was unidentified. The last play of the machine before the end of the year was *554 the event fixing liability. Although it is true that petitioner's liability will arise pursuant to state statute, Hughes does not stand for the principle petitioner argues. In Hughes, though the jackpot winner was not identified, the taxpayer had a definite obligation to pay the amount in the jackpot at some point in the future. Here, in contrast, the initiation of the container deposits does not obligate petitioner to refund the deposits. Instead, petitioner is obligated to refund deposits only in the event that the containers are presented to it for refund. Hughes consistently with the Supreme Court's reasoning in the later General Dynamics case held that liability is fixed at the time the last condition precedent to establishing liability is fulfilled. At that time, and not before, all events have occurred to establish liability; liability is then a fact regardless of later conditions to payment. Burnham Corp. v. Commissioner,90 T.C. at 957-958. If the liability is a fact, enforceable under law, it does not matter whether the liability will arise pursuant to statute or under contract. Burnham Corp. v. Commissioner,90 T.C. at 958 *555 note 2. Just as a voluntary obligation can meet the "all events" test where based on a contract the taxpayer voluntarily entered into, see Mooney Aircraft, Inc. v. United States,420 F.2d 400 (5th Cir. 1969), action required by state statute may fail to satisfy the fact of liability requirement. E.g., United States v. General Dynamics, supra; Fred Nesbit Distributing Co. v. United States, supra.The relevant inquiry, therefore, is not whether an action is taken pursuant to a state statute but whether an expense is firmly established. See Ohio State Collieries Co. v. Commissioner,77 T.C. 1369 (1981). In Ohio River Collieries Co., as in some of the other cases on reclamation liability due to strip mining, the taxpayers were obligated to replace the land because the removed it during the year. It was immaterial to whom payment would be made because the fact of liability was firmly established. Petitioner, on the other hand, was not obligated to refund the deposits or handling charges at the time it initiated the deposits or collected handling charges. The last condition precedent to petitioner's obligation to refund was *556 presentation of containers for refund by dealers or consumers. See United States v. General Dynamics, supra; Burnham Corp. v. Commissioner, supra.
Petitioner argues alternatively that we should allow a deduction for the part of its reserve which represented deposits on containers that had already been returned to retailers and were merely awaiting pick up by petitioner. This argument, however, is merely a restatement of petitioner's main argument. Our prior discussion addresses this assertion also. The Act does not require the retailers to return the containers. Under United States v. General Dynamics, supra, the fact of liability is not fixed until petitioner picks up the containers. Since petitioner failed to satisfy the first requirement of the "all events" test, it is unnecessary to address whether petitioner satisfied the second part of the all events test requiring the determination of the amount of the liability with reasonable accuracy. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for 1983 unless otherwise indicated.↩